Nilesh Choudhary, State Bar No. 219425
Joel Rapaport, 248847
CHOUDHARY LAW OFFICE
4010 Foothills Blvd., 103
Roseville, CA 95747
Telephone (916) 526-2770
Facsimile (916) 944-2051
Attorney for **Plaintiff**,
Aleshna Kumari; A.K.; A.S.; A.K.M

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Aleshna Kumari; A.K.; A.S.; A.K.M., inclusive | Case No.: 2:18-cv-00061-WBS-AC |
| Plaintiffs | **SECOND AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF** |
| v. | |
| County of Sacramento; Jesse Gomez-Coates, an individual, Janelle Gonzalez, an individual, Leona Williams, an individual; and DOES 1-50, inclusive, | |
| Defendants | |

NOW COMES Plaintiffs, A.K., A.S, A.K.M (aka A.K. (male)), Aleshna Kumari, and in the above-entitled matter, by and through her legal counsel, and for their Second Amended Complaint against the above-named Defendants, states as follows:

## Jurisdiction and Venue

1. Plaintiffs A.K., A.S, A.K.M (aka A.K. (male)), Aleshna Kumari, brings this action pursuant to 42 U.S.C. §1983, et. seq., to redress the deprivation of rights secured to them under the

United States Constitution, including the First, Fourth, and Fourteenth Amendments, and under federal and state law. Said deprivations were inflicted by the Defendants herein, and each of them, in some manner. Each of the Defendants herein were at all relevant times acting under color of law. Plaintiffs bring further claims under California State Law.

2. Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1343(a)(3) and 1343(a)(4), which provide for original jurisdiction in this Court of all suits brought pursuant to 42 U.S.C.§ 1983. Jurisdiction is also conferred by 28 U.S.C. § 1331 because the claims for relief derive from the United States Constitution and the laws of the United States.

3. Because the acts and omissions complained of herein occurred in the County of Sacramento, and it is believed that all living parties currently reside in the County of Sacramento, venue is proper in the District Court for the Eastern District of California, Sacramento Division.

**Parties**

4. At all times relevant to this Complaint, Plaintiffs and each of them resided in the County of Sacramento, California.  Plaintiffs, A.K., A.S., A.K.M., are minors under and were taken into custody by the County of Sacramento.  Aleshna Kumari maintained the family as mother to said Plaintiff children.

5. At all times applicable herein, defendant, COUNTY OF SACRAMENTO, was and is a public entity ("Sacramento County" or "County of Sacramento"), and CITY OF SACRAMENTO was and is a public entity ("Sacramento").

6. Plaintiff is informed and believes and thereon alleges that the Sacramento County Child Protective Services ("CPS") is a subdivision, entity, or administrative arm of defendant, COUNTY OF SACRAMENTO.

7. Plaintiff is informed and believes and thereon alleges that, at all times relevant herein, defendants, Jesse Gomez-Coates and Janelle Gonzalez, are and at all times were hereto were individuals residing in the County of Sacramento and employed by the County.

8. Plaintiff is informed and believes and thereon alleges that, at all times relevant herein, defendant, Leona Williams, was an individual residing in the County of Sacramento and

employed by Sacramento County. On information and belief, Williams is a CPS supervisor and in fact was Jesse Gomez-Coates and Janelle Gonzalez's supervisor at all times relevant to the facts and circumstances alleged herein. On further information and belief, at each stage in the proceedings, from the initial seizure of the children to the final report filed by her subordinate workers, Williams is required to consult with, oversee, direct, and agree with every step taken by her subordinate social workers, including Gomez-Coates and Gonzalez, before the subordinate worker undertakes any task or action. To the extent that Gomez-Coates and Gonzalez filed reports, of any kind, with the juvenile court, Williams reviewed, approved of, and co signed those reports.

9.  On information and belief, DEFENDANT DOE 1, is a CPS supervisor and in fact was Gonzalez and Gomez-Coates's temporary or interim supervisor on, or about, January to March of 2017. On further information and belief, at each stage in the proceedings, from the initial seizure of the children to the final report filed by her subordinate workers, DOE 1 is required to consult with, oversee, direct, and agree with every step taken by her subordinate social workers, including Gomez-Coates and Gonzalez, before the subordinate worker undertakes any task or action. To the extent that Gomez-Coates and Saldana filed any Jurisdiction/Disposition Report, with the juvenile court, DOE 1 reviewed, approved of, and co-signed the report.

10. At all times applicable herein, defendant, CITY OF SACRAMENTO was and is a public entity ("Sacramento").

11. Defendants DOES 1 through 50 are sued as fictitious names, their true names and capacities being unknown to Plaintiff. When ascertained, Plaintiff will amend this Complaint by inserting their true names and capacities. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and those Defendants proximately caused, are responsible for and/or legally liable for Plaintiff's damages as herein alleged. Each reference in this complaint to "Defendant," "Defendants," or a specifically named Defendant refers to and includes all Defendants sued under fictitious names. On information and belief, Plaintiff

makes all allegations contained in this Complaint against all Defendants, including DOES 1 through 10.

12. Whenever in this Complaint reference is made to any act of Defendants, such allegations shall be deemed to mean all named Defendants and DOES 1 through 50, or their officers, agents, managers, representatives, employees, heirs, assignees, customers, tenants, who did or authorized such acts while actively engaged in the operation, management, direction or control of the affairs of Defendants and while acting within the course and scope of their duties, except as specifically alleged to the contrary.

13. At all times herein mentioned and with respect to the specific matters alleged in this Complaint, Plaintiff is informed and believes that each Defendant (including DOES 1 through 10), was a parent, subsidiary, affiliate, alter ego, partner, agent, franchisee, licensee, employee, employer, controlling franchiser, controlling licensor, principal, and/or joint venturer of each of the remaining Defendants, and was at all times acting within the course and scope of such agency, service, employment, control and/or joint venture, and each defendant has ratified, approved, conspired in, profited from and/or authorized the acts of each of the remaining Defendants and/or failed to prevent such acts when having the power and/or duty to do so, with full knowledge of said acts.

14. At all times mentioned herein, each of the above-identified defendants was an officer and/or agent of the County of Sacramento and/or the City of Sacramento – as the case may be, and was acting under color of law within the course and scope of their respective duties in doing the things and acts herein alleged.

## **GENERAL ALLEGATIONS**

15. As of January 11, 2017, Aleshna Kumari and her three children, A.K. M., A.K., A.S., constituted a family unit, entitled to constitutional protections, including, but not limited to, the right to live together free of unwarranted governmental interference, the right to familial privacy, and the right of parents to reasonably direct the upbringing of their children. In addition Kumari enjoyed a separate and distinct right to live together without undue

governmental interference as well as the right to not be subjected to deceptive acts undertaken by government agents in the juvenile court processes, i.e., the use by government officials of fabricated evidence, the suppression of exculpatory evidence, perjury, and the like.

16. As of January 11, 2017, when CPS entered and forever changed their lives, A.S. was 9 years old, A.K was 5 years old, A.K.M was 4 years old. Kumari had been adequately caring for her children as a mother for many years and enjoyed a strong and loving bond with her children. At this time A.K.M., A.K., A.S., were happy and healthy, well cared for, and not in need of medical care or attention.

17. Plaintiff and Davinder Kumar are the biological parents of A.K and A.K.M. Plaintiff and all of her children lived in Davinder's home in January 2017.

**18.** In October 2016, Davinder Kumar was arrested for a domestic incident with Kumari. Approximately 2 weeks later, Gomez-Coates contacts Kumari and begins to interrogate Kumari regarding the children being fed, who lives in the house, and whether she feels safe. In December 2016, Kumari is involved in another domestic incident. Gomez-Coats again contacted Kumari and then Davinder Kumari regarding the domestic incident. Gomez-Coats questions Kumari's mental stability and whether they can take care of their minor children. **A week later, Gomez-Coats threatens Kumari and Davinder Kumari that agents for the County would be taking their children and the parents would not see the children for six months if they did not immediately sign paperwork giving the county immediate custody of the children wherein they would see the children within 14 days and would be given weekly visits. Under these threats, Kumari signed the paperwork with the county.**

**– UNWARRANTED SEIZURE**: *CPS Seize* A.K.M., A.K., A.S., *Without Obtaining a Warrant*

19. Faced with the risk of not seeing her children for six months, all three children were seized and detained then and there. For the next several weeks, Kumari was allowed only monitored visits with her children

20. Kumari is informed and believes and thereon alleges that on January 11, 2017, based on the information then in the possession of Defendant social workers, as well as CPS, no reasonable basis existed for believing that the children, were in imminent danger of sustaining serious bodily injury or death within the time it would have taken Gomez-Coates, or any other agent or employee of CPS, to obtain a warrant authorizing the seizure and/or examination of the children, herein described. At the time the children were removed from Kumari's care and custody, Gomez-Coates and Defendants possessed no evidence that the children had suffered any type of harm or abuse at the hands of Kumari.

21. Despite having no specific, reasonable, or articulable evidence that the children were in imminent danger of sustaining serious bodily injury or death within the short amount of time it would have taken to obtain a warrant, Gomez-Coates seized the children on January 11, 2017, and physically removed them from the custody and care of their mother.

22. Defendant Gomez-Coates did not present Plaintiff with a court order or warrant, authorizing the seizure of the children(because they did not have such an order); moreover no one articulated any reasonable basis for believing that the children would suffer great bodily injury or death if the Defendants, took the minimal amount of time necessary to seek a court order or warrant. No exigent circumstances existed at the time of the seizure.

23. To the extent Kumari herself posed any risk of harm to the children – which she certainly did not, remote or otherwise, Defendants Gomez-Coates failed to undertake any reasonable efforts to prevent or mitigate any such risk of harm, so as to avoid the need to seize the children from their mother and family home. In truth, Kumari had no reason to anticipate Puckett's isolated outburst against her, and there was no evidence that she had failed to protect her children, or that she was prone to similar abusive relationships.

24. Said non-consensual and unwarranted seizure of the children was unlawful and in violation of Kumari and the children's Due Process rights, familial association rights, liberty interests, and familial privacy, arising under and guaranteed by the First, Fourth, and Fourteenth Amendments of the United States Constitution, as well as under the California State Constitution.

**- THE CHILDREN'S PLACEMENT**

25. The children remained in CPS custody until or or about February 23, 2017. This will hereinafter be referred to as the "Relevant Period".

26. Plaintiff Children initially stayed at the Sacramento County Child Protective Facility located in Sacramento, California. On approximately January 19, 2019, Plaintiff Children were sent to 243 Majestic Lane in Sacramento where Evelyn Martin ("E Martin") and Anthony Martin ("A. Martin") lived collectively the "Martins". They were placed through CPS. It is stated on information and belief that CPS failed to review the Martin household prior to placement to make sure it met California regulations including but not limited to: (1) ensuring there is no smoking in the household and (2) no more than two children would reside in one room. If County employees reviewed their own regulations, Plaintiff children would not have been to placed in the Martin home, which contained, and subject them to, dangerous conditions which ultimately lead to their injuries and emotional distress.

27. Kumari was told through CPS that she would be able to see the kids twice per week along with regular phone calls. This did occur until January 27, 2017 [parental visits occurred on 1/13, 1/15, and 1/21] when Kumari noticed bruising of A.K.M. and the children complaining of mistreatment. She immediately informed and physically showed their social worker, Gomez-Coates, requesting that the matter be investigated. Gomez-Coates acknowledged the injuries stating he would investigate but took no further action with respect to the physical injuries or abuse. Kumari contacted the Police Department who informed her that there was nothing that could be done because CPS was involved.

28. Thereafter, Kumari was denied access to the children from January 27 through February 5, 2017. During phone calls between Kumari and the Plaintiff children, the children made repeated complaints of mistreatment and Kumari continued to make complaints to CPS. These complaints included mistreatment by Martin occupant "Sharon", who is believed to have to have been 18 years old at the relevant time period and "Anaya" who was 13 years old during the relevant time period. Sharon physically punched A.S. in the stomach and placed A.S. in the trash can, in addition to other aggressive acts. "Anaya", who was 13 at the of the

incident and was supervising the children, had them illegally walk through heavy traffic into a park. Further, Plaintiff children also described an aggressive dog that was being left in the residence that had severely scratched A.K.M, which was shown to Diana from CPS during a visit. Again, despite stating the matter would be investigated, no action was taken. Each of these issues was raised to Gomez-Coates and other CPS agents (Williams and Gonzalez) demanding that the children be removed or another act be taken.

29. Kumari On February 14, 2017 the Plaintiff children told Kumari that they were almost struck by a car while "Anaya" walked them to the park. Kumari told CPS agents about this incident and they said they would address it but to Plaintiffs' knowledge they never addressed it. Kumari was informed and told CPS about "3 hour timeouts" that were give to A.K.M. that were causing him severe emotional distress. When Kumari saw the Plaintiff children on subsequent visits (2/7, 2/12, 2/14, 2/19, 2/21) they had dandruff from E Martin and A Martin refusing to wash the Plaintiff children's' scalps, very poor hygiene including being left in the same clothes for several days leaving them dirty causing rashes in areas many body area (including genital areas) and there was weight loss from lack of proper nutrition. Plaintiffs have been informed and believe and therefore state that despite all of these complaints and showing of physical ailments of the children to CPS agents, no County Social Worker ever even entered the home.

30. On February 22, 2017, Kumari received an urgent call from the children. A.K.M. had been bitten on the face by the Martin dog. The bite occurred directly under his right eye and has left scarring. He was taken to ER and was given six stitches. The day after, the children were finally removed and returned to home. When the children returned home they have struggled emotionally with their experiences while being in the E Martin and A Martin home.

31. Additionally, Mr. Martin smoked in the home and all three children were compelled to share a bedroom.

32. County social workers, Jesse Gomez-Coates, Janelle Gonzalez, & Leona Williams, the CPS supervisor, were placed on repeated notice of these issues, by way of phone calls from Kumari and in person physically showing injuries who was in constant telephone/physical

contact with her children.  It is stated on information and belief that the agents of CPS stated they would investigate but took no steps to remedy the situation until the children were ultimately removed from the Martin's home.  Further, it is believed that agents for CPS, despite notice of the issues in the house, never even entered the home during the relevant period to see what the conditions inside of the house were like.  The abuse and mistreatment continued despite this notice.

33. It is stated on information and belief that CPS – after finally recognizing the issues - has stopped placing children in the home of Evelyn Martin and Anthony Martin.  Janelle Gonzalez, has indicated in conversations with Kumari that there was negligence on behalf of CPS in this situation.

## FIRST CAUSE OF ACTION
### Count 1
### For Violation of Civil Rights (42 U.S.C. §1983)
### (Procedural Due Process, Unlawful Seizure, Invasion of Privacy, and Interruption of Familial Association/Failure to Intercede)
### By PLAINTIFFS
### Against Defendants, GOMEZ-COATES, WILLIAMS, GONZALEZ, COUNTRY OF SACRAMENTO, and DOES 1 through 10, inclusive

34. Plaintiff realleges, and incorporates herein as if set forth in full, paragraphs 1 through 33.

35. Plaintiff is an individual and citizen of the United States, protected by 42 U.S.C. § 1983, et seq.

36. At all times relevant herein, the right to familial association guaranteed under the First and Fourteenth Amendments to the United States Constitution was "clearly established" such that any reasonable social services agent and/or police officer in Defendants' situation would know it is unlawful to seize a child from the care, custody, and control of its parents or to question, threaten, examine, or search a child in the absence of exigent circumstances without first obtaining a warrant to do so. Furthermore, any such reasonable social worker and/or

police officer would know that to do so would constitute a violation of the parents', and children's, well-elaborated constitutional right to live together without governmental interference – which rights are protected under the First and Fourteenth Amendments to the United States Constitution.

37. Defendants, and each of them, had, at all times relevant herein, an affirmative duty and obligation to recognize, acknowledge, and respect the Plaintiff's rights, and to conduct themselves in a manner that confirms, provides for the preservation of, and does not violate the rights guaranteed Plaintiff under the United States Constitution, including, without limitation, the protection of parental rights, the right to privacy, family integrity and the right to familial relations.

38. Defendants, and each of them, were acting under color of state law when they jointly acted, or knew and agreed and thereby conspired, to violate Plaintiffs' constitutional rights by, but not limited to, removing, detaining, and continuing to detain first A.K., A.K.M., A.S, and later going back to snatch A.T. from the care, custody, and control of their mother, without proper or just cause and/or authority, in the absence of any exigency, and without first obtaining a warrant or other court order – thereby violating Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution.

39. None of the Defendants sought, or obtained, a protective custody warrant prior to seizing Plaintiff's children, A.K., A.K.M., or A.S on January 11, 2017, at the family home, by taking physical custody over the children, seizing them, and carting them away from their loving mother.  Defendants used coercive methods as described *supra.* to seize the children. Defendants jointly acted or conspired to seize the children, as described above, knowing that no protective custody warrant for the children's seizure issued and that exigent circumstances did not exist. Plaintiff did not consent, at any time, to the searches and seizures described herein above.

40. At no time ever did any of the Defendants have any specific, articulable evidence to support any reasonable basis to believe that any of Plaintiff's three children were in immediate danger of sustaining serious bodily injury or death within the time it would have taken the

Defendants to seek and obtain a custody warrant. Indeed, Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, purposefully or recklessly failed to seek a protective custody warrant, in derogation of Plaintiffs' clearly established rights to due process and familial association.

41. At the time of coerced seizure, other more reasonable and less intrusive alternative means existed to secure Plaintiffs' civil rights and security, short of the warrantless seizure and detention of all three children, yet these defendants, and each of them, intentionally, or with a reckless, wanton, or malicious disregard for Plaintiff's rights, failed to pursue or investigate such less intrusive alternative means of keeping the family together.

42. Defendants committed said unconstitutional acts without proper justification or authority, and without probable cause, exigency, or court order. Defendants, and each of them, maliciously violated and/or conspired to violate the civil rights of Plaintiffs, including violation of Plaintiff's rights found in the Fourteenth Amendment of the United States Constitution, by, but not limited to, removing, detaining, and continuing to detain the five minor children from the care, custody, and control of their mother, without proper or just cause and/or authority, and by use of coercion, duress, or fraud to obtain, or attempt to obtain, evidence supporting detention. Said acts were taken deliberately, with callous or reckless indifference to the substantial rights of Plaintiff, or fueled by an evil motive or intent.

43. As a direct and proximate result of these Defendants' misconduct, Plaintiff has suffered, and will continue to suffer, general and special damages according to proof at trial, including but not limited to, physical and/or mental anxiety and anguish, among other things.

44. Due to the malicious, wanton, callous, reckless, wrongful and despicable nature of the Defendants' misconduct, as herein alleged and described, Plaintiffs are entitled to recover punitive damages against the individual Defendants, and each of them, in accordance with law and subject to proof at trial.

**Count 2**

**(VIOLATION OF 42 U.S.C. 1983 FOR PROCEDURAL DUE PROCESS FOR OF 14th AMENDMENT ASSERTED BY PLAINITFF CHILDREN AGAINST COUNTY OF SACRAMENTO, GOMEZ-COATES, WILLIAMS, GONZALEZ AND DOES 11-25)**

45. Plaintiffs re-alleges and incorporates by reference as if fully set forth herein paragraphs 1 through 44 above.

46. The deliberate indifference of the County officials and the County resulted in the deprivation of the Plaintiff children's entitlement to personal safety in the foster homes.

a. The County is obligated to follow the Adoption Assistance and Child Welfare Act of 1980 P.L. 96-272 which states in relevant part at Section 471(a)(9): "provides that where any agency of the State has reason to believe that the home or institution in which a child resides whose care is being paid for in whole or in part with funds provided under this part or part B of this title is unsuitable for the child because of the neglect, abuse, or exploitation of such child, it shall bring such condition to the attention of the appropriate court or law enforcement agency."

a. California Department of Social Services' Child Welfare Services Program General Requirements found at http://www.cdss.ca.gov/ord/entres/getinfo/pdf/cws1.PDF provide a further basis for a violation of the Children's Due Process rights.  Specifically at § 31-002 states that the Children Defendant's are "children" for purposes of the regulations, and that that the abuse they suffered violated the regulations and constituted "child abuse" a home, which qualifies at "foster care".  The County and it's agents failed to follow the "grievance" procedure as identified at 31-002(g) and 31-020.  The County further violated it's regulations identified at § 31-005 which specifically states that it will "actively recruit competent placement providers and facilities that will aid in the attainment of the goals of the children's case plans and meet the varied needs of the

children for such care," and "ensure that county stagg are aware of the policies and programs that are available through placement facilities to ensure their effective use,"

b. Violation of Welfare and Institutions Code §16519.5, et. al for failure to "Ensuring that social workers who identify a condition in the home that may not meet the approval standards set forth in subdivision (d) while in the course of a routine visit to children placed with a resource family take appropriate action as needed" and "Inspecting resource family homes as often as necessary to ensure the quality of care provided. (8) (A) Investigating all complaints against a resource family and taking action as necessary, including, but not limited to, investigating any incidents reported about a resource family indicating that the approval standard is not being maintained and inspecting the resource family home."

47. These Statues and each of them created a vested claim of entitlement, which the Plaintiff children were denied without due process of law.   Specifically, Defendants agents were under an obligation to investigate claims of abuse at the foster home and of the Plaintiff children.  Defendants and each of them failed to investigate said proof.

**48.** The Plaintiff children suffered damages in an amount according to proof.


**SECOND CAUSE OF ACTION**

**Count 1**

**(*Monell*-Related Claims)**

**By Plaintiff**

**Against COUNTY OF SACRAMENTO, and DOES 1 through 10, inclusive**

49. Plaintiff realleges, and incorporates herein as if set forth in full, paragraphs 1 through 48, inclusive.

50. Defendant County of Sacramento, including through its child welfare services agency, is a "person" within the meaning of 42 U.S.C. § 1983 and subject to Monell liability. Monell v.

Dept. of Social Services (1978) 436 U.S. 658. Defendants, and each of them, acted under color of state law when committing the acts alleged herein, in violation of Plaintiff's rights.

51. Defendant County of Sacramento, including through its entity CPS, and those individuals in their official capacity who had supervisory and/or policy making authority, had a duty to Plaintiff all times to establish, implement and follow policies, procedures, customs and/or practices (hereinafter referred to as "policy" or "policies") which confirm and provide the protections guaranteed Plaintiff under the United States Constitution, including those under the First and Fourteenth Amendments, to include without limitation, the protection of the right to familial relations; the right to privacy; the right not to be defamed or stigmatized. Said defendants also had a duty to use reasonable care to select, assign, supervise, train, control and review the activities of all their agents, officers, employees and those acting under them, including within CPS, so as to protect these constitutional rights; and to refrain from acting with deliberate indifference to the constitutional rights of Plaintiffs in order to avoid causing the injuries and damages alleged herein.

52. Moreover, based on the duties charged to Defendant County of Sacramento, including the powers to seize children from their parents' care, the County of Sacramento, and its policymaking officials, knew or should have known of the need to establish customs, policies, and practices required to protect the aforementioned civil rights of parents and their children with whom their CPS agents regularly came into contact.

53. Moreover, based on the duties charged to Defendant County of Sacramento, including the powers to seize children from their parents' care, the County of Sacramento, and its policymaking officials, knew or should have known legally required conditions for placement of children under law as follows:

   (a) **Child Abuse and Neglect Reporting Act** ("**CANRA**") (Penal Code §§ 11164-11174.3) to protect the Children from 1) neglect; 2) the willful harming or injuring of a child or the endangering of the person or health of a child; 3) unlawful corporal punishment or injury; 4) abuse or neglect in out-of-home care; and/or 5) child abuse or neglect.

**(b)** Specifically, the Social Workers in this case, Jesse Gomez-Coates, Janelle Gonzalez, & Leona Williams were all mandated to report abuse under Penal Code §§ 11165.7(5)(13)(15)(14)(37)

**(c)** Additionally, the Martins Defendants were mandated to report abuse under Penal Code § 11165.7(14)(45)(46)

**(d)** The Defendant's and each of them failed to report the ongoing abuse of the Children as required by the law violating Plantiffs Due Process rights and causing them damage.

**(e)** California Department of Social Services' Child Welfare Services Program General Requirements found at http://www.cdss.ca.gov/ord/entres/getinfo/pdf/cws1.PDF provide a further basis for a violation of the Children's Due Process rights.  Specifically at § 31-002 states that the Children Defendant's are "children" for purposes of the regulations, and that that the abuse they suffered violated the regulations and constituted "child abuse" a home which qualifies at "foster care".  The County and it's agents failed to follow the "grievance" procedure as identified at 31-002(g) and 31-020.  The County further violated it's regulations identified at § 31-005 which specifically states that it will "actively recruit competent placement providers and facilities that will aid in the attainment of the goals of the children's case plans and meet the varied needs of the children for such care," and "ensure that county stagg are aware of the policies and programs that are available through placement facilities to ensure their effective use,"

**(f)** 22 CCR § 83087 (a) states that licensee shall provide bedrooms in the home which shall meet, at a minimum, the following requirements:

(1) No more than two children shall share a bedroom.

….

(d) The licensee shall prohibit smoking in the facility and on the grounds of the facility.

(g) The licenses violated these provisions as Mr. Martin smoked in the home and all three children shared 1 bedroom.

54. Defendant County of Sacramento established, adopted, followed, and/or implemented and/or turned a blind eye to customs, and/or practices which were followed, complied with, and carried out by the Social Worker Defendants when Plaintiff's constitutional rights were violated by and/or through the seizure of A.K., A.K.M., A.S., without a warrant or other court order in the absence of any exigency or parental consent. At the time of the underlying events, the regularly established customs and practices of the County of Sacramento's CPS agency that were followed, adhered to, complied with, and carried out by Defendants, were the moving force, that is, the actual, direct, and proximate cause of the violations of Plaintiff's constitutional rights include, but are not limited to:

a. the custom and/or practice of detaining and/or removing children from their family and homes without exigent circumstances (imminent danger of serious bodily injury), court order and/or consent;

b. the custom and/or practice of removing children from their family and their homes without first obtaining a warrant when no exigency exists;

c. the custom and/or practice of removing and detaining children, and continuing to detain them for an unreasonable period long after any alleged basis for detention is negated;

d. The unwritten policy of acting with deliberate indifference to the rights of children and parents with whom CPS agents can regularly be expected to come into contact by failing and/or refusing to implement a practice of regular and adequate training and/or supervision, and/or by failing to train and/or supervise its agents, employees and state actors, in providing and ensuring compliance with the constitutional protections guaranteed to individuals, including those under the First and Fourteenth

Amendments, when performing actions related to child abuse and dependency type investigations and court proceedings;

e. the consistent failure by the County of Sacramento to investigate violations of constitutional rights by social workers, and consistent failure to discipline social workers and their supervisors involved in constitutional violations so that violations of citizen's constitutional rights were not only accepted, but were customary;

(This list is not exhaustive due to the pending nature of discovery and the privileged and protected records of investigative and juvenile dependency type proceedings. Plaintiff may seek leave to amend this pleading as more information becomes available.)

55. On information and belief, County of Sacramento has engaged in each of the customs and/or practices identified above on an ongoing and continuous basis at least since 2016, if not earlier, and continues to engage in said practices on an ongoing and daily basis.

56. The County of Sacramento is aware that its social workers seize children from the care of their parents without first obtaining judicial authorization when there is no emergency circumstance and in contravention of the rights of both parents and children.  The County of Sacramento's decision to disregard these constitutional protections in the face of a known need for such policies to prevent the specific misconduct alleged herein above, i.e. the known need for a specific policy prohibiting its social workers from seizing children from their parents without a warrant or emergency, is itself a 'policy' decision which constitutes a policy of deliberate indifference. Said policy of deliberate indifference, and the lack of prophylactic policies and training in the face of a known need for such policies and training was a substantial factor in causing the Plaintiff's harm, in that the County Social Worker Defendants both followed and acted pursuant to the regularly established customs, practices, and well known and accepted standard operating procedures when they seized A.K., A.K.M., A.S which would never have happened if they County of Sacramento had refrained from deliberately ignoring its obligation to promulgate policies and the concomitant training necessary to inform its social workers of the constitutional proscriptions which govern their daily work.

57. Plaintiff is informed and believes, that Defendant County of Sacramento failed to establish, adopt, and/or implement policies, procedures, and training regarding the constitutional protections afforded to a parent and child by the First and Fourteenth Amendments. Without such policies, procedures, customs, and/or practices in place, the County of Sacramento Social Workers were allowed and permitted to engage in conduct that was in violation of Plaintiff's constitutional rights as more specifically alleged in the General Allegations set out herinabove. On information and belief, the Defendant County's failure to adopt such polices was the moving force behind the violations of Plaintiff's constitutional rights and includes, but is not limited to:

   a. The County of Sacramento had no written policy, procedure, custom, practice and/or training regarding the circumstances under which a county social worker must obtain judicial authorization prior to removing a child from the custody of its parent(s);

   b. The County of Sacramento had no written policy, procedure, custom, practice and/or training requiring a county social worker to obtain judicial authorization prior to removing a child from the custody of its parent(s), when there was no evidence that the child was in immediate risk of suffering serious bodily injury;

   c. The County of Sacramento had no written policy, procedure, custom, practice and/or training delineating the constitutional protections afforded to a parent and child by the First and Fourteenth Amendments;

   d. The County of Sacramento had no written policy, procedure, custom, practice and/or training instructing that a county social worker must posses "specific, articulable evidence" that a child would be placed at imminent risk of suffering serious harm at the hands of the parent(s), prior to removing the child from its parent's custody without judicial authorization;

   e. The County of Sacramento had no written policy, procedure, custom, practice and/or training instructing that a county social worker must disclose all known exculpatory evidence to the juvenile court;

58. By deliberately refraining from promulgating any of the aforementioned policies, procedures, customs, practices and/or training, the County of Sacramento permitted the aforementioned basic policy decisions to be made by the lower level social workers. As a result, the County of Sacramento's policy, custom, and/or practice – as established, adopted, and implemented by the Social Worker Defendants – was to detain a child from its parent(s) without judicial authorization, parental consent, and without specific, reasonable, and articulable evidence to suggest that the child is in immediate risk of suffering serious bodily injury – that disregards the Plaintiff's constitutional protections – was a substantial factor in causing harm to the Plaintiff. Thus, as a matter of law, because there was not formal policy preventing the aforementioned misconduct – which is exactly what they did when they seized the Plaintiff's children without a warrant and in the absence of any exigency.

59. The state of the law regarding the constitutional protections afforded to a parent and child by the First and Fourteenth Amendments was clearly established well before 2017. As such, the County of Sacramento knew before 2017 that its county social workers required training on the constitutional protections afforded to a parent and child. On information and belief, despite this knowledge, the County of Sacramento deliberately failed to train its county social workers on these constitutional protections, including, but not limited to, the following:

   a. The County of Sacramento did not provide training to its county social workers regarding the circumstances under which judicial authorization must be obtained prior to removing a child from the custody of its parent(s);

   b. The County of Sacramento did not provide training to its county social workers regarding the fact that judicial authorization must be obtained prior to removing a child from the custody of its parent(s), when there was no evidence that the child was in immediate risk of suffering serious bodily injury;

   c. The County of Sacramento did not provide training to its county social workers regarding the fact that judicial authorization or parental consent is required prior to interviewing, examining, and/or interrogating a child – outside the presence of its

parent(s) – when there is no specific articulable evidence that the child is in immediate risk of suffering serious bodily injury;

    d.   The County of Sacramento did not provide training to its county social workers on the well established constitutional protections afforded to a parent and child by the First and Fourteenth Amendments;

    e.   The County of Sacramento did not provide training to its county social workers instructing that a county social worker must disclose all known exculpatory evidence to the juvenile court;

60. The County of Sacramento's deliberate failure to train its county social workers on these established constitutional protections was a substantial factor in causing the Plaintiff's harm, in that CPS agents working for the County of Sacramento were unfamiliar with and oblivious to the Plaintiff's constitutional rights, when the Social Worker Defendants (1) seized Plaintiff's children, without judicial authorization, parental consent, and in the absence of exigent circumstances.

61. Plaintiff is informed and believes that, the County of Sacramento failed to investigate the Social Worker Defendants' seizure of Plaintiff's children from her custody without judicial authorization, parental consent, and without specific, reasonable, and articulable evidence to suggest that the child is in immediate risk of suffering serious bodily injury. Plaintiff is further informed and believes that, the County of Sacramento never investigates a social worker who seizes a child from its parent's custody without judicial authorization, parental consent, and without specific, reasonable, and articulable evidence to suggest that the child is in immediate risk of suffering serious bodily injury.

62. Plaintiff is informed and believes that, the County of Sacramento failed to discipline the Social Worker Defendants for seizing Plaintiff's children from her custody without judicial authorization, parental consent, and without specific, reasonable, and articulable evidence to suggest that the child is in immediate risk of suffering serious bodily injury. Plaintiff is further informed and believes that, the County of Sacramento never disciplines a county social worker for seizing Plaintiff's children from her custody without judicial authorization,

parental consent, and without specific, reasonable, and articulable evidence to suggest that the child is in immediate risk of suffering serious bodily injury.

63. The seizure of Plaintiff's children from her custody without judicial authorization, parental consent, and without specific, reasonable, and articulable evidence to suggest that the child is in immediate risk of suffering serious bodily injury was perpetrated by three social workers and occurred at two separate locations. Plaintiffs are informed and believes that the warrantless seizure of her children by the County social Workers was not an isolated incident specific to her circumstances. On the contrary, such warrantless and unlawful seizures are regular and recurring.

64. County of Sacramento, including by and through its entity CPS and its policymaking officials, breached its duties and obligations to Plaintiff by, but not limited to, failing to establish, implement and follow the correct and proper Constitutional policies, procedures, customs and practices; by failing to properly select, supervise, train, control, and review its agents and employees as to their compliance with Constitutional safeguards; and by deliberately permitting the Defendants, and DOES 1 through 10, inclusive, to engage in the unlawful and unconstitutional conduct as herein alleged with at total and deliberate indifference to the rights of affected parents, including Plaintiffs herein.

65. County of Sacramento knew, or should have known, that by breaching the above-mentioned duties and obligations that it was reasonably foreseeable that its agency policies, practices, customs, and usages would, and did, directly cause Plaintiff to be injured and damaged by County of Sacramento's wrongful practices, or deliberate lack of official policies to prevent the known practices from occurring.

66. In fact, the County of Sacramento has been aware, since at least 2016, that its CPS agents regularly and customarily seized and detained children from their families, parents, and homes in the manner described herein – i.e., in the absence of any exigency without first obtaining a warrant. Yet, despite such foreknowledge, Sacramento County has deliberately refrained and refused to promulgate any form of prophylactic policy to define acceptable conduct of its CPS workers in such a manner as to protect the citizens with whom they

regularly come into contact. The conduct described herein is so pervasive that it has become common knowledge that they type of misconduct alleged herein is commonplace within CPS to such an extent that Sacramento County can be said be deliberately indifferent to the need to promulgate policies and provide training to rein in its CPS agents, and prevent the type of misconduct alleged herein. Such a policy of indifference was in fact the moving force behind the violation of Plaintiffs' constitutional rights as alleged herein above. Namely, Plaintiff's civil rights were violated, as mentioned above, when Defendants and DOES 1 through 10, while acting under color of state law and in conformance with official customs and practices of the County of Sacramento jointly acted to seize Plaintiff's children without a warrant.

67. These actions, and/or inactions, of County of Sacramento were the moving force behind, and direct and proximate cause of Plaintiff's injuries, as alleged herein; and as a result, Plaintiff has sustained general and special damages, to an extent and in an amount to be proven at trial. In addition, Plaintiff has incurred, and will continue to incur, attorneys fees, costs and expenses, including those as authorized by 42 U.S.C. § 1988, to an extent and in an amount subject to proof at trial.

### Count 2

### (*Monell*-Related Claims)

**VIOLATION OF 42 U.S.C. 1983 FOR SUBSTANTIVE DUE PROCESS VIOLATION FOR CONDITIONS OF CONFINEMENT IN VIOLATION OF 14th AMENDMENT ASSERTED BY PLAINITFF CHILDREN AGAINST COUNTY OF SACRAMENTO AND DOES 11-25**

68. Plaintiffs re-alleges and incorporates by reference as if fully set forth herein paragraphs 1 through 67 above.

69. Defendant County of Sacramento, including through its child welfare services agency, is a "person" within the meaning of 42 U.S.C. § 1983 and subject to Monell liability. Monell v. Dept. of Social Services (1978) 436 U.S. 658. Defendants, and each of them, acted under color of state law when committing the acts alleged herein, in violation of Plaintiff's rights.

70. Defendant County of Sacramento, including through its entity CPS, and those individuals in their official capacity who had supervisory and/or policy making authority, had a duty to

Plaintiff all times to establish, implement and follow policies, procedures, customs and/or practices (hereinafter referred to as "policy" or "policies") which confirm and provide the protections guaranteed Plaintiff under the United States Constitution, including those under the First and Fourteenth Amendments, to include without limitation, the protection of the right to familial relations; the right to privacy; the right not to be defamed or stigmatized. Said defendants also had a duty to use reasonable care to select, assign, supervise, train, control and review the activities of all their agents, officers, employees and those acting under them, including within CPS, so as to protect these constitutional rights; and to refrain from acting with deliberate indifference to the constitutional rights of Plaintiffs in order to avoid causing the injuries and damages alleged herein.

71. Plaintiff Children, as a result of County of Sacramento Placement through their agents Gomez-Coates, Williams, Gonzalez, confined the children to conditions which violated legally required conditions under law as follows:

**(g)** **Child Abuse and Neglect Reporting Act** ("**CANRA**") (Penal Code §§ 11164-11174.3) to protect the Children from 1) neglect; 2) the willful harming or injuring of a child or the endangering of the person or health of a child; 3) unlawful corporal punishment or injury; 4) abuse or neglect in out-of-home care; and/or 5) child abuse or neglect.

**(h)** Specifically, the Social Workers in this case, Jesse Gomez-Coates, Janelle Gonzalez, & Leona Williams were all mandated to report abuse under Penal Code §§ 11165.7(5)(13)(15)(14)(37)

**(i)** Additionally, the Martins Defendants were mandated to report abuse under Penal Code § 11165.7(14)(45)(46)

**(j)** The Defendant's and each of them failed to report the ongoing abuse of the Children as required by the law violating Plantiffs Due Process rights and causing them damage.

**(k)** California Department of Social Services' Child Welfare Services Program General

Requirements found at http://www.cdss.ca.gov/ord/entres/getinfo/pdf/cws1.PDF provide a further basis for a violation of the Children's Due Process rights.  Specifically at § 31-002 states that the Children Defendant's are "children" for purposes of the regulations, and that that the abuse they suffered violated the regulations and constituted "child abuse" a home which qualifies at "foster care".  The County and it's agents failed to follow the "grievance" procedure as identified at 31-002(g) and 31-020.  The County further violated it's regulations identified at § 31-005 which specifically states that it will "actively recruit competent placement providers and facilities that will aid in the attainment of the goals of the children's case plans and meet the varied needs of the children for such care," and "ensure that county stagg are aware of the policies and programs that are available through placement facilities to ensure their effective use,"

(l)  22 CCR § 83087 (a) states that licensee shall provide bedrooms in the home which shall meet, at a minimum, the following requirements:

> (1) No more than two children shall share a bedroom.

….

> (d) The licensee shall prohibit smoking in the facility and on the grounds of the facility.

> (g) The licenses violated these provisions as Mr. Martin smoked in the home and all three children shared 1 bedroom.

As a result this illegal confinement, the Plaintiff Children were subject to physical injuries, physical and emotional distress for which they must be a recovery of damages in an amount according to proof.

### Count 3

### (VIOLATION OF 42 U.S.C. 1983 FOR SUBSTANTIVE DUE PROCESS VIOLATION FOR BREACH OF MANDATORY DUTIES IN VIOLATION OF 14th

## AMENDMENT ASSERTED BY PLAINITFF CHILDREN AGAINST COUNTY OF SACRAMENTO AND DOES 11-25)

72. Plaintiffs re-alleges and incorporates by reference as if fully set forth herein paragraphs 1 through 71 above.

73. Defendant County of Sacramento, including through its child welfare services agency, is a "person" within the meaning of 42 U.S.C. § 1983 and subject to Monell liability. Monell v. Dept. of Social Services (1978) 436 U.S. 658. Defendants, and each of them, acted under color of state law when committing the acts alleged herein, in violation of Plaintiff's rights.

74. Defendant County of Sacramento, including through its entity CPS, and those individuals in their official capacity who had supervisory and/or policy making authority, had a duty to Plaintiff all times to establish, implement and follow policies, procedures, customs and/or practices (hereinafter referred to as "policy" or "policies") which confirm and provide the protections guaranteed Plaintiff under the United States Constitution, including those under the First and Fourteenth Amendments, to include without limitation, the protection of the right to familial relations; the right to privacy; the right not to be defamed or stigmatized. Said defendants also had a duty to use reasonable care to select, assign, supervise, train, control and review the activities of all their agents, officers, employees and those acting under them, including within CPS, so as to protect these constitutional rights; and to refrain from acting with deliberate indifference to the constitutional rights of Plaintiffs in order to avoid causing the injuries and damages alleged herein.

75. As referenced in the operative facts above, County of Sacramento and their agents Gomez-Coates, Williams, and Gonzalez had mandatory duties to report, investigate, and remediate Plaintiff Childrens' housing situation and abuse through the following duties:

   a. **Child Abuse and Neglect Reporting Act** ("**CANRA**") (Penal Code §§ 11164-11174.3) to protect the Children from 1) neglect; 2) the willful harming or injuring of a child or the endangering of the person or health of a child; 3) unlawful corporal punishment or injury; 4) abuse or neglect in out-of-home care; and/or 5) child abuse

or neglect.

b.  Specifically, the Social Workers in this case, Jesse Gomez-Coates, Janelle Gonzalez, & Leona Williams were all mandated to report abuse under Penal Code §§ 11165.7(5)(13)(15)(14)(37)

c.  Additionally, the Martins Defendants were mandated to report abuse under Penal Code § 11165.7(14)(45)(46)

d.  The Defendant's and each of them failed to report the ongoing abuse of the Children as required by the law violating Plantiffs Due Process rights and causing them damage.

e.  California Department of Social Services' Child Welfare Services Program General Requirements found at http://www.cdss.ca.gov/ord/entres/getinfo/pdf/cws1.PDF provide a further basis for a violation of the Children's Due Process rights. Specifically at § 31-002 states that the Children Defendant's are "children" for purposes of the regulations, and that that the abuse they suffered violated the regulations and constituted "child abuse" a home, which qualifies at "foster care". The County and it's agents failed to follow the "grievance" procedure as identified at 31-002(g) and 31-020.  The County further violated it's regulations identified at § 31-005 which specifically states that it will "actively recruit competent placement providers and facilities that will aid in the attainment of the goals of the children's case plans and meet the varied needs of the children for such care," and "ensure that county stagg are aware of the policies and programs that are available through placement facilities to ensure their effective use,"

     f.   22 CCR § 83087 (a) states that licensee shall provide bedrooms in the home which

         shall meet, at a minimum, the following requirements:

             (1) No more than two children shall share a bedroom.

….

             (d) The licensee shall prohibit smoking in the facility and on the grounds of the

facility.

             (g) The licenses violated these provisions as Mr. Martin smoked in the home and

all three children shared 1 bedroom.

76. As a result the breach of these mandatory duties, the Plaintiff Children were subject to

physical injuries, physical and emotional distress for which they must be a recovery of

damages in an amount according to proof.

**Count 4**

**(VIOLATION OF 42 U.S.C. 1983 FOR SUBSTANTIVE DUE PROCESS FOR
DELIBERATE INDIFFERENCE IN VIOLATION OF 14th AMENDMENT
ASSERTED BY PLAINITFF CHILDREN AGAINST COUNTY OF SACRAMENTO
AND DOES 11-25)**

77. Plaintiffs re-alleges and incorporates by reference as if fully set forth herein paragraphs 1

through 76 above.

78. Defendant County of Sacramento, including through its child welfare services agency, is a

"person" within the meaning of 42 U.S.C. § 1983 and subject to Monell liability. Monell v.

Dept. of Social Services (1978) 436 U.S. 658. Defendants, and each of them, acted under

color of state law when committing the acts alleged herein, in violation of Plaintiff's rights.

79. Defendant County of Sacramento, including through its entity CPS, and those individuals in

their official capacity who had supervisory and/or policy making authority, had a duty to

Plaintiff all times to establish, implement and follow policies, procedures, customs and/or

practices (hereinafter referred to as "policy" or "policies") which confirm and provide the

protections guaranteed Plaintiff under the United States Constitution, including those under

the First and Fourteenth Amendments, to include without limitation, the protection of the right to familial relations; the right to privacy; the right not to be defamed or stigmatized. Said defendants also had a duty to use reasonable care to select, assign, supervise, train, control and review the activities of all their agents, officers, employees and those acting under them, including within CPS, so as to protect these constitutional rights; and to refrain from acting with deliberate indifference to the constitutional rights of Plaintiffs in order to avoid causing the injuries and damages alleged herein.

80. County had a special relationship over the Plaintiff children wherein they had control over the children's wellbeing and safety.

81. This Plaintiff children had a substantive due process right to their personal safety.

82. The Defendants and each of them breached this duty by allowing them to be inflicted with unnecessary harm while in state-regulated foster homes.

83. Further, as referenced in the operative facts, Defendant County of Sacramento through their CPS social workers including Gomez-Coates, Williams, Gonzalez were made aware of and were shown Plaintiff children bruising and related injuries, traumatic incidents causing emotional distress, a dangerous propensity of a household dog that had scratched A.K.M prior to the dog bite leading to their release, and related information as referenced in the operative facts incorporated herein.

84. Sacramento County, Gomez-Coates, Williams, Gonzalez have duties relating to report and protect children pursuant to the following:

(a) **Child Abuse and Neglect Reporting Act** ("**CANRA**") (Penal Code §§ 11164-11174.3) to protect the Children from 1) neglect; 2) the willful harming or injuring of a child or the endangering of the person or health of a child; 3) unlawful corporal punishment or injury; 4) abuse or neglect in out-of-home care; and/or 5) child abuse or neglect.

(b) Specifically, the Social Workers in this case, Jesse Gomez-Coates, Janelle Gonzalez, &

Leona Williams were all mandated to report abuse under Penal Code §§

11165.7(5)(13)(15)(14)(37)

(c) Additionally, the Martins Defendants were mandated to report abuse under Penal Code §

11165.7(14)(45)(46)

(d) The Defendant's and each of them failed to report the ongoing abuse of the Children as

required by the law violating Plaintiffs Due Process rights and causing them damage.

**(e)** California Department of Social Services' Child Welfare Services Program General

Requirements found at http://www.cdss.ca.gov/ord/entres/getinfo/pdf/cws1.PDF provide

a further basis for a violation of the Children's Due Process rights. Specifically at § 31-

002 states that the Children Defendant's are "children" for purposes of the regulations,

and that that the abuse they suffered violated the regulations and constituted "child

abuse" a home which qualifies at "foster care". The County and it's agents failed to

follow the "grievance" procedure as identified at 31-002(g) and 31-020. The County

further violated it's regulations identified at § 31-005 which specifically states that it will

"actively recruit competent placement providers and facilities that will aid in the

attainment of the goals of the children's case plans and meet the varied needs of the

children for such care," and "ensure that county stagg are aware of the policies and

programs that are available through placement facilities to ensure their effective use,"

Despite these duties, Defendants and each of them recklessly disregarding their duties and

representations to Kumari that they would investigate leading to Plaintiff Children physical

injuries and severe emotional distress compelling damages in an amount according to proof.

85. The County and individual Defendant's were thus deliberately indifferent to the Plaintiff

children.

86. As a result of the Defendant, and each of their conduct, Plaintiff children were damaged in an amount according to proof.

### THIRD CAUSE OF ACTION

### Count 1

### (VIOLATION OF 42 U.S.C. 1983 FOR SUBSTANTIVE DUE PROCESS VIOLATION FOR CONDITIONS OF CONFINEMENT IN VIOLATION OF 14th AMENDMENT ASSERTED BY PLAINITFF CHILDREN AGAINST GOMEZ-COATES, WILLIAMS, GONZALEZ AND DOES 11-25)

87. Plaintiffs re-alleges and incorporates by reference as if fully set forth herein paragraphs 1 through 86 above.

88. Plaintiff Children, as a result of County of Sacramento Placement through their agents Gomez-Coates, Williams, Gonzalez, confined the children to conditions which violated legally required conditions under law as follows:

(m) **Child Abuse and Neglect Reporting Act** ("CANRA") (Penal Code §§ 11164-11174.3) to protect the Children from 1) neglect; 2) the willful harming or injuring of a child or the endangering of the person or health of a child; 3) unlawful corporal punishment or injury; 4) abuse or neglect in out-of-home care; and/or 5) child abuse or neglect.

(n) Specifically, the Social Workers in this case, Jesse Gomez-Coates, Janelle Gonzalez, & Leona Williams were all mandated to report abuse under Penal Code §§ 11165.7(5)(13)(15)(14)(37)

(o) Additionally, the Martins Defendants were mandated to report abuse under Penal Code § 11165.7(14)(45)(46)

(p)  The Defendant's and each of them failed to report the ongoing abuse of the Children as required by the law violating Plantiffs Due Process rights and causing them damage.

(q) California Department of Social Services' Child Welfare Services Program General Requirements found at http://www.cdss.ca.gov/ord/entres/getinfo/pdf/cws1.PDF provide a further basis for a violation of the Children's Due Process rights.  Specifically at § 31-002 states that the Children Defendant's are "children" for purposes of the regulations, and that that the abuse they suffered violated the regulations and constituted "child abuse" a home which qualifies at "foster care".  The County and it's agents failed to follow the "grievance" procedure as identified at 31-002(g) and 31-020.  The County further violated it's regulations identified at § 31-005 which specifically states that it will "actively recruit competent placement providers and facilities that will aid in the attainment of the goals of the children's case plans and meet the varied needs of the children for such care," and "ensure that county stagg are aware of the policies and programs that are available through placement facilities to ensure their effective use,"

(r) 22 CCR § 83087 (a) states that licensee shall provide bedrooms in the home which shall meet, at a minimum, the following requirements:

(1) No more than two children shall share a bedroom.

….

(d) The licensee shall prohibit smoking in the facility and on the grounds of the facility.

(g) The licenses violated these provisions as Mr. Martin smoked in the home and all three children shared 1 bedroom.

89. As a result this illegal confinement, the Plaintiff Children were subject to physical injuries, physical and emotional distress for which they must be a recovery of damages in an amount according to proof.

**Count 2**

SECOND AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

**(VIOLATION OF 42 U.S.C. 1983 FOR SUBSTANTIVE DUE PROCESS VIOLATION FOR BREACH OF MANDATORY DUTIES IN VIOLATION OF 14th AMENDMENT ASSERTED BY PLAINITFF CHILDREN AGAINST GOMEZ-COATES, WILLIAMS, GONZALEZ AND DOES 11-25)**

90. Plaintiffs re-alleges and incorporates by reference as if fully set forth herein paragraphs 1 through 89 above.

91. As referenced in the operative facts above, County of Sacramento and their agents Gomez-Coates, Williams, and Gonzalez had mandatory duties to report, investigate, and remediate Plaintiff Childrens' housing situation and abuse through the following duties:

   a. **Child Abuse and Neglect Reporting Act** ("**CANRA**") (Penal Code §§ 11164-11174.3) to protect the Children from 1) neglect; 2) the willful harming or injuring of a child or the endangering of the person or health of a child; 3) unlawful corporal punishment or injury; 4) abuse or neglect in out-of-home care; and/or 5) child abuse or neglect.

   b. Specifically, the Social Workers in this case, Jesse Gomez-Coates, Janelle Gonzalez, & Leona Williams were all mandated to report abuse under Penal Code §§ 11165.7(5)(13)(15)(14)(37)

   c. Additionally, the Martins Defendants were mandated to report abuse under Penal Code § 11165.7(14)(45)(46)

   d. The Defendant's and each of them failed to report the ongoing abuse of the Children as required by the law violating Plaintiffs Due Process rights and causing them damage.

   e. California Department of Social Services' Child Welfare Services Program General Requirements found at http://www.cdss.ca.gov/ord/entres/getinfo/pdf/cws1.PDF provide a further basis for a violation of the Children's Due Process rights.

Specifically at § 31-002 states that the Children Defendant's are "children" for purposes of the regulations, and that that the abuse they suffered violated the regulations and constituted "child abuse" a home, which qualifies at "foster care". The County and it's agents failed to follow the "grievance" procedure as identified at 31-002(g) and 31-020.  The County further violated it's regulations identified at § 31-005 which specifically states that it will "actively recruit competent placement providers and facilities that will aid in the attainment of the goals of the children's case plans and meet the varied needs of the children for such care," and "ensure that county stagg are aware of the policies and programs that are available through placement facilities to ensure their effective use,"

f.  22 CCR § 83087 (a) states that licensee shall provide bedrooms in the home which shall meet, at a minimum, the following requirements:

    (1) No more than two children shall share a bedroom.

….

    (d) The licensee shall prohibit smoking in the facility and on the grounds of the facility.

    (g) The licenses violated these provisions as Mr. Martin smoked in the home and all three children shared 1 bedroom.

92. As a result the breach of these mandatory duties, the Plaintiff Children were subject to physical injuries, physical and emotional distress for which they must be a recovery of damages in an amount according to proof.

### Count 3

**(VIOLATION OF 42 U.S.C. 1983 FOR SUBSTANTIVE DUE PROCESS FOR DELIBERATE INDIFFERENCE IN VIOLATION OF 14th AMENDMENT**

**ASSERTED BY PLAINITFF CHILDREN AGAINST GOMEZ-COATES, WILLIAMS, GONZALEZ AND DOES 11-25)**

93. Plaintiffs re-alleges and incorporates by reference as if fully set forth herein paragraphs 1 through 92 above.

94. County had a special relationship over the Plaintiff children wherein they had control over the children's wellbeing and safety.

95. This Plaintiff children had a substantive due process right to their personal safety.

96. The Defendants and each of them breached this duty by allowing them to be inflicted with unnecessary harm while in state-regulated foster homes.

97. Further, as referenced in the operative facts, Defendant County of Sacramento through their CPS social workers including Gomez-Coates, Williams, Gonzalez were made aware of and were shown Plaintiff children bruising and related injuries, traumatic incidents causing emotional distress, a dangerous propensity of a household dog that had scratched A.K.M prior to the dog bite leading to their release, and related information as referenced in the operative facts incorporated herein.

98. Sacramento County, Gomez-Coates, Williams, Gonzalez have duties relating to report and protect children pursuant to the following:

(f) **Child Abuse and Neglect Reporting Act** ("CANRA") (Penal Code §§ 11164-11174.3) to protect the Children from 1) neglect; 2) the willful harming or injuring of a child or the endangering of the person or health of a child; 3) unlawful corporal punishment or injury; 4) abuse or neglect in out-of-home care; and/or 5) child abuse or neglect.

(g) Specifically, the Social Workers in this case, Jesse Gomez-Coates, Janelle Gonzalez, & Leona Williams were all mandated to report abuse under Penal Code §§ 11165.7(5)(13)(15)(14)(37)

(h) Additionally, the Martins Defendants were mandated to report abuse under Penal Code § 11165.7(14)(45)(46)

(i)  The Defendant's and each of them failed to report the ongoing abuse of the Children as required by the law violating Plaintiffs Due Process rights and causing them damage.

**(j)** California Department of Social Services' Child Welfare Services Program General Requirements found at http://www.cdss.ca.gov/ord/entres/getinfo/pdf/cws1.PDF provide a further basis for a violation of the Children's Due Process rights.  Specifically at § 31-002 states that the Children Defendant's are "children" for purposes of the regulations, and that that the abuse they suffered violated the regulations and constituted "child abuse" a home which qualifies at "foster care".  The County and it's agents failed to follow the "grievance" procedure as identified at 31-002(g) and 31-020.  The County further violated it's regulations identified at § 31-005 which specifically states that it will "actively recruit competent placement providers and facilities that will aid in the attainment of the goals of the children's case plans and meet the varied needs of the children for such care," and "ensure that county stagg are aware of the policies and programs that are available through placement facilities to ensure their effective use,"

Despite these duties, Defendants and each of them recklessly disregarding their duties and representations to Kumari that they would investigate leading to Plaintiff Children physical injuries and severe emotional distress compelling damages in an amount according to proof.

99. The County and individual Defendant's were thus deliberately indifferent to the Plaintiff children.

100.  As a result of the Defendant, and each of their conduct, Plaintiff children were damaged in an amount according to proof.

## FOURTH CAUSE OF ACTION

### (BREACH OF MANDATORY DUTY UNDER CALIFORNIA GOVERNMENT CODE SECTION 815.6 ASSERTED BY PLAINITFF CHILDREN AGAINST COUNTY OF SACRAMENTO AND DOES 11-25)

101.    Plaintiffs re-alleges and incorporates by reference as if fully set forth herein paragraphs 1 through 100 above.

102.    As referenced in the operative facts above, County of Sacramento through their agents Gomez-Coates, Williams, and Gonzalez had mandatory duties to report, investigate, and remediate Plaintiff Childrens' housing situation and abuse through the following duties:

    a.  **Child Abuse and Neglect Reporting Act** ("**CANRA**") (Penal Code §§ 11164-11174.3) to protect the Children from 1) neglect; 2) the willful harming or injuring of a child or the endangering of the person or health of a child; 3) unlawful corporal punishment or injury; 4) abuse or neglect in out-of-home care; and/or 5) child abuse or neglect.

    b.  Specifically, the Social Workers in this case, Jesse Gomez-Coates, Janelle Gonzalez, & Leona Williams were all mandated to report abuse under Penal Code §§ 11165.7(5)(13)(15)(14)(37)

    c.  Additionally, the Martins Defendants were mandated to report abuse under Penal Code § 11165.7(14)(45)(46)

    d.  The Defendant's and each of them failed to report the ongoing abuse of the Children as required by the law violating Plantiffs Due Process rights and causing them damage.

    **e.**  California Department of Social Services' Child Welfare Services Program General

Requirements found at http://www.cdss.ca.gov/ord/entres/getinfo/pdf/cws1.PDF provide a further basis for a violation of the Children's Due Process rights. Specifically at § 31-002 states that the Children Defendant's are "children" for purposes of the regulations, and that that the abuse they suffered violated the regulations and constituted "child abuse" a home, which qualifies at "foster care". The County and it's agents failed to follow the "grievance" procedure as identified at 31-002(g) and 31-020.  The County further violated it's regulations identified at § 31-005 which specifically states that it will "actively recruit competent placement providers and facilities that will aid in the attainment of the goals of the children's case plans and meet the varied needs of the children for such care," and "ensure that county stagg are aware of the policies and programs that are available through placement facilities to ensure their effective use,"

f.   22 CCR § 83087 (a) states that licensee shall provide bedrooms in the home which shall meet, at a minimum, the following requirements:

(1) No more than two children shall share a bedroom.

….

(d) The licensee shall prohibit smoking in the facility and on the grounds of the facility.

(g) The licenses violated these provisions as Mr. Martin smoked in the home and all three children shared 1 bedroom.

103.   As a result the breach of these mandatory duties, the Plaintiff Children were subject to physical injuries, physical and emotional distress for which they must be a recovery of damages in an amount according to proof.

**FIFTH CAUSE OF ACTION**

SECOND AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

**(BREACH OF MANDATORY DUTY UNDER CALIFORNIA GOVERNMENT CODE SECTION 820.2 ASSERTED BY PLAINITFF CHILDREN AGAINST GOMEZ-COATES, WILLIAMS, GONZALEZ AND DOES 11-25)**

104.    Plaintiffs re-alleges and incorporates by reference as if fully set forth herein paragraphs 1 through 103 above.

105.    As referenced in the operative facts above, County of Sacramento agents Gomez-Coates, Williams, and Gonzalez had mandatory duties to report, investigate, and remediate Plaintiff Childrens' housing situation and abuse through the following duties:

   a. **Child Abuse and Neglect Reporting Act** ("**CANRA**") (Penal Code §§ 11164-11174.3) to protect the Children from 1) neglect; 2) the willful harming or injuring of a child or the endangering of the person or health of a child; 3) unlawful corporal punishment or injury; 4) abuse or neglect in out-of-home care; and/or 5) child abuse or neglect.

   b. Specifically, the Social Workers in this case, Jesse Gomez-Coates, Janelle Gonzalez, & Leona Williams were all mandated to report abuse under Penal Code §§ 11165.7(5)(13)(15)(14)(37)

   c. Additionally, the Martins Defendants were mandated to report abuse under Penal Code § 11165.7(14)(45)(46)

   d. The Defendant's and each of them failed to report the ongoing abuse of the Children as required by the law violating Plantiffs Due Process rights and causing them damage.2

   e. California Department of Social Services' Child Welfare Services Program General Requirements found at http://www.cdss.ca.gov/ord/entres/getinfo/pdf/cws1.PDF provide a further basis for a violation of the Children's Due Process rights.

SECOND AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

38

Specifically at § 31-002 states that the Children Defendant's are "children" for purposes of the regulations, and that that the abuse they suffered violated the regulations and constituted "child abuse" a home which qualifies at "foster care". The County and it's agents failed to follow the "grievance" procedure as identified at 31-002(g) and 31-020.  The County further violated it's regulations identified at § 31-005 which specifically states that it will "actively recruit competent placement providers and facilities that will aid in the attainment of the goals of the children's case plans and meet the varied needs of the children for such care," and "ensure that county stagg are aware of the policies and programs that are available through placement facilities to ensure their effective use,"

f.  22 CCR § 83087 (a) states that licensee shall provide bedrooms in the home which shall meet, at a minimum, the following requirements:

(1) No more than two children shall share a bedroom.

….

(d) The licensee shall prohibit smoking in the facility and on the grounds of the facility.

(g) The licenses violated these provisions as Mr. Martin smoked in the home and all three children shared 1 bedroom.

106.    As a result the breach of these mandatory duties, the Plaintiff Children were subject to physical injuries, physical and emotional distress for which they must be a recovery of damages in an amount according to proof.


**JURY DEMAND**

Plaintiff demands a jury trial as to all issues so triable.


SECOND AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

**PRAYER**

**WHEREFORE**, Plaintiff prays for judgment against Defendants, as to all causes of action, as follows:

      1.     General damages and special damages according to proof, but in no event less than $1,000,000;

      2.     As against only the individual defendants and not any municipality, punitive damages as allowed by law;

      3.     Attorneys fees pursuant to 42 U.S.C. § 1988, and any other appropriate statute;

      4.     Costs of suit incurred herein; and

      5.     Such further relief as the Court deems just and proper.

May 5, 2018                       Choudhary Law Office

                                          <u>s/ Joel Rapaport</u>
                                          Joel Rapaport
                                          Attorneys for Plaintiff