Nilesh Choudhary, State Bar No. 219425
CHOUDHARY LAW OFFICE
4010 Foothills Blvd., 103
Roseville, CA 95747
Telephone (916) 526-2770
Facsimile (916) 740-4672
Attorney for **Plaintiff**,
AK, AS, AKM,
Aleshna Kumari

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALESHNA KUMARI, A.K., A.S. A.K.M. inclusive | ) Case No.: 2:18-CV-00061-WBS-AC |
| | ) |
| | ) **THIRD AMENDED COMPLAINT FOR** |
| Plaintiffs | ) **DAMAGES AND EQUITABLE RELIEF** |
| | ) |
| v. | ) |
| | ) |
| COUNTY OF SACRAMENTO; JESSE | ) |
| GOMEZ-COATS, an individual, JANELLE | ) |
| GONZALEZ, an individual, LEONA | ) |
| WILLIAMS, an individual, and DOES 1-50 | ) |
| inclusive | ) |
| | ) |
| Defendants | |

---

NOW COMES Plaintiffs  A.K., A.S., A.K.M., by and through their Guaridan Ad Litem,
Hardip Singh, and Plaintiff Aleshna Kumari in the above-entitled matter, and by and through her
legal counsel, and for their Complaint against the above-named Defendants, states as follows:

## I.

## JURISDICTION AND VENUE

1. Plaintiffs A.K., A.S, A.K.M (aka A.K. (male)), Aleshna Kumari, brings this action pursuant to 42 U.S.C. §1983, et. seq., to redress the deprivation of rights secured to them under the United States Constitution, including the Fourth, Fifth, and Fourteenth Amendments, and under federal and state law. Said deprivations were inflicted by the Defendants herein, and each of them, in some manner. Each of the Defendants herein were at all relevant times acting under color of law. Plaintiffs bring further claims under California State Law.

2. Jurisdiction is conferred on this Court by 28 U.S.C. §§ 1343(a)(3) and 1343(a)(4), which provide for original jurisdiction in this Court of all suits brought pursuant to 42 U.S.C.§ 1983. Jurisdiction is also conferred by 28 U.S.C. § 1331 because the claims for relief derive from the United States Constitution and the laws of the United States.

3. Because the acts and omissions complained of herein occurred in the County of Sacramento, and it is believed that all living parties currently reside in the County of Sacramento, venue is proper in the District Court for the Eastern District of California, Sacramento Division.

# I.
## PARTIES

1. Plaintiff AK resides in Sacramento, California in Sacramento County. AK has resided in Sacramento County for all times material to this complaint.  At the beginning of the incidents described in this case she was 5; she turned 6 during said incidents.

2. Plaintiff AS resides in Sacramento, California in Sacramento County.  AS has resided in Sacramento County for all times material to this complaint.  He was 8 years old at the time of the incidents taking place in this action.

3. Plaintiff AKM resides in Sacramento, California in Sacramento County.  AKM has resided in Sacramento County for all times material to this complaint.  He was 4 years old at the time of the incidents taking place in this action.

4. AK, AS, and AKM shall be referred to in this action collectively as the "Plaintiff Children". AK, AS, and AKM have brought their claims through their guardian ad litem, Hardip Singh.

5. Plaintiff Aleshna Lata Kumari (hereinafter "Aleshna") resides in Sacramento, California in Sacramento County.  Aleshna has resided in Sacramento County for all times material to this complaint.  She is the mother of the Plaintiff Children.

6. Defendant County of Sacramento, (hereinafter "County") operates their department of Child Protective Services and employed Jesse Gomez-Coats, Janelle Gonzalez, and Leona Williams to perform as County agents for Child Protective Services.

7. Jesse Cortez (hereinafter "Cortez") was employed by the County of Sacramento as a social worker during the relevant period for this purposes of this complaint.

8. Janelle Gonzalez (hereinafter "Gonzalez") was employed by the County of Sacramento as a social worker during the relevant period for this purposes of this complaint

9. Leona Williams (hereinafter "Williams") was employed by the County of Sacramento as a social worker manager for Cortez and Gonzalez during the relevant period for purposes of this complaint.

10. The true names and capacities of defendants sued herein as DOES 1-50, inclusive, whether individual, corporate, associate, or otherwise are unknown to Plaintiff who, therefore sue such defendants by such fictitious names.  When their true names and capacities are ascertained, Plaintiff will amend this complaint by asserting their true names and capacities herein.  Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's damages as herein alleged were proximately caused by those defendants.

## II.

## FACTUAL ALLEGATIONS

### A.  SEIZURE AND TAKING OF AK, AS, and AKM FROM KUMARI

11. Plaintiff and Davinder Kumar are the biological parents of A.K and A.K.M. Plaintiff, Aleshna Kumari, and all of her children, AK, AS, and AKM lived in Davinder's home during all relevant times for purposes of this complaint.

12. At all relevant times for purposes of this matter, Aleshna Kumari and her three children, A.K.M., A.K., A.S., constituted a family unit, entitled to constitutional protections, including, but not limited to, the right to live together free of unwarranted governmental interference,

the right to familial privacy, and the right of parents to reasonably direct the upbringing of their children.  In addition Kumari enjoyed a separate and distinct right to live together without undue governmental interference as well as the right to not be subjected to deceptive acts undertaken by government agents in the juvenile court processes, i.e., the use by government officials of fabricated evidence, the suppression of exculpatory evidence, perjury, and the like.

13. In October 2016, Davinder Kumar was arrested for a domestic incident with Kumari. Approximately 2 weeks later, Gomez-Coates contacts Kumari and begins to interrogate Kumari regarding the children being fed, who lives in the house, and whether she feels safe. In December 2016, Kumari was involved in another domestic incident.  Gomez-Coats again contacted Kumari and then Davinder Kumari regarding the domestic incident.  Gomez-Coats questioned Kumari's mental stability and whether they can take care of their minor children. **A week later, Gomez-Coats threatened Kumari and Davinder Kumari that agents for the County would be taking their children and the parents would not see the children for six months unless they immediately signed paperwork giving the county immediate custody of the children.  If they were to do this, they were promised they would see the children within 14 days and would be given weekly visits.  Under these threats, Kumari signed the paperwork with the county.**

14. Faced with the risk of not seeing her children for six months, all three children were seized and detained then and there.  For the next several weeks, Kumari was allowed only monitored visits with her children

15. On January 11, 2017, CPS removed AS, AK, and AKM from their home. This removal forever changed their lives. A.S. was 9 years old, A.K was 5 years old, A.K.M was 4 years old. Kumari had been adequately caring for her children as a mother for many years and enjoyed a strong and loving bond with her children. At this time A.K.M., A.K., A.S., were happy and healthy, well cared for, and not in need of medical care or attention.

16. Kumari is informed and believes and thereon alleges that on January 11, 2017, based on the information then in the possession of Defendant social workers, as well as CPS, no

reasonable basis existed for believing that the children, were in imminent danger of sustaining serious bodily injury or death within the time it would have taken Gomez-Coates, or any other agent or employee of CPS, to obtain a warrant authorizing the seizure and/or examination of the children, herein described. At the time the children were removed from Kumari's care and custody, Gomez-Coates and Defendants possessed no evidence that the children had suffered any type of harm or abuse at the hands of Kumari.

17. Despite having no specific, reasonable, or articulable evidence that the children were in imminent danger of sustaining serious bodily injury or death within the short amount of time it would have taken to obtain a warrant, Gomez-Coates seized the children on January 11, 2017, and physically removed them from the custody and care of their mother.

18. Defendant Gomez-Coates did not present Plaintiff with a court order or warrant, authorizing the seizure of the children (because they did not have such an order); moreover no one articulated any reasonable basis for believing that the children would suffer great bodily injury or death if the Defendants, took the minimal amount of time necessary to seek a court order or warrant. No exigent circumstances existed at the time of the seizure.

19. To the extent Kumari herself posed any risk of harm to the children – which she certainly did not, remote or otherwise, Defendants Gomez-Coates failed to undertake any reasonable efforts to prevent or mitigate any such risk of harm, so as to avoid the need to seize the children from their mother and family home.

20. Said non-consensual and unwarranted seizure of the children was unlawful and in violation of Kumari and the children's Due Process rights, familial association rights, liberty interests, and familial privacy, arising under and guaranteed by the First, Fourth, and Fourteenth Amendments of the United States Constitution, as well as under the California State Constitution.

**B. UNLAWFUL TREATMENT TO A.S., A.K. AND A.K.M DURING CUSTODY OF DEFEDNANTS**

21. The children remained in CPS custody until or about February 23, 2017.  This will hereinafter be referred to as the "Relevant Period".

22. Plaintiff Children initially stayed at the Sacramento County Child Protective Facility located in Sacramento, California.  On approximately January 19, 2019, Plaintiff Children were sent to 243 Majestic Lane in Sacramento where Evelyn Martin ("E Martin") and Anthony Martin ("A. Martin") lived collectively the "Martins".  They were placed through CPS.  It is stated on information and belief that CPS failed to review the Martin household prior to placement to make sure it met California regulations including but not limited to: (1) ensuring there is no smoking in the household and (2) no more than two children would reside in one room.  If County employees reviewed their own regulations, Plaintiff children would not have been to placed in the Martin home, which contained, and subject them to, dangerous conditions which ultimately lead to their injuries and emotional distress.

23. Kumari was told through CPS that she would be able to see the kids twice per week along with regular phone calls.  This did occur until January 27, 2017 [parental visits occurred on 1/13, 1/15, and 1/21] when Kumari noticed bruising of A.K.M. and the children complaining of mistreatment.  She immediately informed and physically showed their social worker, Gomez-Coates, requesting that the matter be investigated.  Gomez-Coates acknowledged the injuries stating he would investigate but took no further action with respect to the physical injuries or abuse.  Kumari contacted the Police Department who informed her that there was nothing that could be done because CPS was involved.

24. Defendants Gomez-Coats, Williams, and Gonzalez are "mandatory reporters" as Sacramento County Social Workers and Sacramento County employees of a child care institution under Penal Code section 11165.7(a) 14 and 15.  As mandatory reporters, these defendants had a duty to report child neglect and abuse of AS, AK, and AKM under Penal Code section 11165.2 and specifically report about neglect and abuse by foster parents under Penal Code section 11165.5.  These reporters are under an obligation to create a report of the neglect or abuse under Penal Code section 11165.9.  Further follow up reports are required under Penal Code section 11166.

25. In addition to mandatory reporter obligations, counties and their employees are under an obligation to investigate complaints against resource families under Welfare and Institutions

Code section 16519.5 (g)(8)(A).  The Martins for purposes of this section are a "resource

family"

26. From January 27 through February 5, 2017, Kumari was denied access to the children.

During phone calls between Kumari and the Plaintiff children, the children made repeated

complaints of mistreatment; Kumari continued to make complaints to CPS.  These

complaints included mistreatment by Martin occupant "Sharon", who is believed to have

been 18 years old at the relevant time period and "Anaya" who was 13 years old during the

relevant time period.  Sharon physically punched A.S. in the stomach and placed A.S. in a

trash-can, in addition to other aggressive acts.   "Anaya", who was supervising the children,

had them illegally walk through heavy traffic into a park.  Further, Plaintiff children also

described an aggressive dog that was being left in the residence that had severely scratched

A.K.M, which was shown to Diana from CPS during a visit.  Again, despite stating the

matter would be investigated, no action was taken.  Each of these issues was raised to

Gomez-Coates and other CPS agents (Williams and Gonzalez) demanding that the children

be removed or another act be taken.

27. On February 14, 2017 the Plaintiff children told Kumari that they were almost struck by a car

while "Anaya" walked them to the park.  Kumari told CPS agents about this incident and

they said they would address it but to Plaintiffs' knowledge they never addressed it.  Kumari

was informed and told CPS about "3 hour timeouts" that were given to A.K.M. that were

causing him severe emotional distress.  When Kumari saw the Plaintiff children on

subsequent visits (2/7, 2/12, 2/14, 2/19, 2/21) they had dandruff from E Martin and A Martin

refusing to wash the Plaintiff children's' scalps, very poor hygiene including being left in the

same clothes for several days leaving them dirty causing rashes in areas many body area

(including genital areas) and there was weight loss from lack of proper nutrition.  Plaintiffs

have been informed and believe and therefore state that despite all of these complaints and

showing of physical ailments of the children to CPS agents, no County Social Worker ever

even entered the home.

28. On February 22, 2017, Kumari received an urgent call from the children.  A.K.M. had been bitten on the face by the Martin dog.  The bite occurred directly under his right eye and has left scarring.  He was taken to ER and was given six stitches.  The day after, the children were finally removed and returned to Kumari's home.  Since the children returned home they have struggled emotionally with their experiences while being in the Martin home.

29. Additionally, Mr. Martin smoked in the home and all three children were compelled to share a bedroom.

30. County social workers, Jesse Gomez-Coates, Janelle Gonzalez, & Leona Williams, the CPS supervisor, were placed on repeated notice of these issues, by way of phone calls and in person from Kumari, who physically showed them pictures of the injuries and reported the constant telephone calls she was having with her children.  It is stated on information and belief that the agents of CPS stated they would investigate but took no steps to remedy the situation until the children were ultimately removed from the Martin's home.  Further, it is believed that agents for CPS, despite notice of the issues in the house, never even entered the home during the relevant period to see what the conditions inside of the house were like.  The abuse and mistreatment continued despite this notice.

31. It is stated on information and belief that CPS – after finally recognizing the issues - has stopped placing children in the home of Evelyn Martin and Anthony Martin.  Janelle Gonzalez, has indicated in conversations with Kumari that there was negligence on behalf of CPS in this situation.

## III.

## LEGAL CLAIMS

## FIRST CAUSE OF ACTION

## (VIOLATION OF 4th AMENDMENT - UNLAWFUL SEIZURE – 28 U.S.C. 1983 BY PLAINTIFFS AGAINST ALL DEFENDANTS)

32. Plaintiff re-alleges and incorporates by reference as if fully set forth herein paragraphs 1 through 31 above.

33. Aleshna Kumari and her three children, A.K.M., A.K., A.S., constituted a family unit, entitled to constitutional protections, including, but not limited to, the right to live together free of unwarranted governmental interference, the right to familial privacy, and the right of parents to reasonably direct the upbringing of their children.  In addition Kumari enjoyed a separate and distinct right to live together without undue governmental interference as well as the right to not be subjected to deceptive acts undertaken by government agents.

34. Reasonable social services agent and/or police officer in Defendants' situation would know it is unlawful to seize a child from the care, custody, and control of its parents or to question, threaten, examine, or search a child in the absence of exigent circumstances without first obtaining a warrant to do so. Furthermore, any such reasonable social worker and/or police officer would know that to do so would constitute a violation of the parents', and children's, well-elaborated constitutional right to live together without governmental interference – which rights are protected under the First and Fourteenth Amendments to the United States Constitution.

35. Defendants, and each of them, had, at all times relevant herein, an affirmative duty and obligation to recognize, acknowledge, and respect the Plaintiff's rights, and to conduct themselves in a manner that confirms, provides for the preservation of, and does not violate the rights guaranteed Plaintiff under the United States Constitution, including, without limitation, the protection of parental rights, the right to privacy, family integrity and the right to familial relations.

36. Defendants, and each of them, were acting under color of state law when they jointly acted, or knew and agreed and thereby conspired, to violate Plaintiffs' constitutional rights by, but not limited to, removing, detaining, and continuing to detain first A.K., A.K.M., A.S, and later going back to snatch A.T. from the care, custody, and control of their mother, without proper or just cause and/or authority, in the absence of any exigency, and without first obtaining a warrant or other court order – thereby violating Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution.

37. None of the Defendants sought, or obtained, a protective custody warrant prior to seizing Plaintiff's children, A.K., A.K.M., or A.S on January 11, 2017, at the family home, by taking physical custody over the children, seizing them, and carting them away from their loving mother.  Defendants used coercive methods as described *supra.* to seize the children. Defendants jointly acted or conspired to seize the children, as described above, knowing that no protective custody warrant for the children's seizure issued and that exigent circumstances did not exist. Plaintiff did not consent, at any time, to the searches and seizures described herein above.

38. At no time ever did any of the Defendants have any specific, articulable evidence to support any reasonable basis to believe that any of Plaintiff's three children were in immediate danger of sustaining serious bodily injury or death within the time it would have taken the Defendants to seek and obtain a custody warrant. Indeed, Plaintiff is informed and believes and thereon alleges that Defendants, and each of them, purposefully or recklessly failed to seek a protective custody warrant, in derogation of Plaintiffs' clearly established rights to due process and familial association.

39. At the time of coerced seizure, other more reasonable and less intrusive alternative means existed to secure Plaintiffs' civil rights and security, short of the warrantless seizure and detention of all three children, yet these defendants, and each of them, intentionally, or with a reckless, wanton, or malicious disregard for Plaintiff's rights, failed to pursue or investigate such less intrusive alternative means of keeping the family together.

40. Defendants committed said unconstitutional acts without proper justification or authority, and without probable cause, exigency, or court order. Defendants, and each of them, maliciously violated and/or conspired to violate the civil rights of Plaintiffs, including violation of Plaintiff's rights found in the Fourteenth Amendment of the United States Constitution, by, but not limited to, removing, detaining, and continuing to detain the five minor children from the care, custody, and control of their mother, without proper or just cause and/or authority, and by use of coercion, duress, or fraud to obtain, or attempt to obtain, evidence supporting detention. Said acts were taken deliberately, with callous or

reckless indifference to the substantial rights of Plaintiff, or fueled by an evil motive or intent.

41. As a direct and proximate result of these Defendants' misconduct, Plaintiffs have suffered, and will continue to suffer, general and special damages according to proof at trial, including but not limited to, physical and/or mental anxiety and anguish, among other things.

42. Due to the malicious, wanton, callous, reckless, wrongful and despicable nature of the Defendants' misconduct, as herein alleged and described, Plaintiffs are entitled to recover punitive damages against the individual Defendants, and each of them, in accordance with law and subject to proof at trial.

## SECOND CAUSE OF ACTION

### (VIOLATION OF EIGHTH AMENDMENT – DELIBERATE INDIFFERENCE BY AK, AS, AND AKM AGAINST ALL DEFENDANTS )

43. Plaintiff re-alleges and incorporates by reference as if fully set forth herein paragraphs 1 through 42 above.

44. As detailed in the Operative Facts, AS, AK, and AKM were in Sacramento County Custody from January 11, 2018 to February 23, 2018 after being seized from Kumari under coercive circumstances.

45. During their time in Sacramento County Custody, AS, AK, and AKM were placed in Foster Care with the Martins from January 19, 2017 to February 22, 2017.  During this time, AS, AK, and AKM, experienced the treatment which Kumari reported and Defendant responded as follows:

(a) On January 27, 2017, Kumari noticed bruising of A.K.M. and the children complaining of mistreatment.  She immediately informed and physically showed their social worker, Gomez-Coates, requesting that the matter be investigated.  Gomez-Coates acknowledged the injuries stating he would investigate but took no further action with respect to the

physical injuries or abuse.  Kumari contacted the Police Department who informed her that there was nothing that could be done because CPS was involved.

(b) During phone calls from January 27, 2017 and February 5, 2017 between Kumari and the Plaintiff children, the children made repeated complaints of mistreatment and Kumari continued to make complaints to CPS.  These complaints included mistreatment by Martin occupant "Sharon", who is believed to have to have been 18 years old at the relevant time period and "Anaya" who was 13 years old during the relevant time period. Sharon physically punched A.S. in the stomach and placed A.S. in the trash can, in addition to other aggressive acts.   "Anaya" had them illegally walk through heavy traffic into a park.  Further, Plaintiff children also described an aggressive dog that was being left in the residence that had severely scratched A.K.M, which was shown to Diana from CPS during a visit.  Again, despite stating the matter would be investigated, no action was taken.  Each of these issues was raised to Gomez-Coates and other CPS agents (Williams and Gonzalez) demanding that the children be removed or another act be taken.

(c) On February 14, 2017 the Plaintiff children told Kumari that they were almost struck by a car while "Anaya" walked them to the park.  Kumari told CPS agents about this incident and they said they would address it but to Plaintiffs' knowledge they never addressed it. Kumari was informed and told CPS about "3 hour timeouts" that were give to A.K.M. that were causing him severe emotional distress.  When Kumari saw the Plaintiff children on subsequent visits (2/7, 2/12, 2/14, 2/19, 2/21) they had dandruff from E Martin and A Martin refusing to wash the Plaintiff children's' scalps, very poor hygiene including being left in the same clothes for several days leaving them dirty causing rashes in areas many body area (including genital areas) and there was weight loss from lack of proper nutrition.  Plaintiffs have been informed and believe and therefore state that despite all of these complaints and showing of physical ailments of the children to CPS agents, no County Social Worker ever even entered the home.

(d) On February 22, 2017, Kumari received an urgent call from the children.  A.K.M. had been bitten on the face by the Martin dog.  The bite occurred directly under his right eye and has left scarring.  He was taken to ER and was given six stitches.  The day after, the children were finally removed and returned to home.  When the children returned home they have struggled emotionally with their experiences while being in the E Martin and A Martin home.

(e) County social workers, Jesse Gomez-Coates, Janelle Gonzalez, & Leona Williams, the CPS supervisor, were placed on repeated notice of these issues, by way of phone calls from Kumari and in person physically showing injuries who was in constant telephone/physical contact with her children.  It is stated on information and belief that the agents of CPS stated they would investigate but took no steps to remedy the situation until the children were ultimately removed from the Martin's home.  Further, it is believed that agents for CPS, despite notice of the issues in the house, never even entered the home during the relevant period to see what the conditions inside of the house were like.  The abuse and mistreatment continued despite this notice.

46. Defendants Gomez-Coats, Williams, and Gonzalez are "mandatory reporters" as Sacramento County Social Workers and Sacramento County employees of a child care institution under Penal Code section 11165.7(a) 14 and 15.  As mandatory reporters, these defendants had a duty to report child neglect and abuse of AS, AK, and AKM under Penal Code section 11165.2 and specifically report about neglect and abuse by foster parents under Penal Code section 11165.5.  These reporters are under an obligations to create a report of the neglect or abuse under Penal Code section 11165.9.  Further follow up reports are required under Penal Code section 11166.

47. In addition to mandatory reporter obligations, counties and their employees are under an obligation to investigate complaints against resource families under Welfare and Institutions Code section 16519.5  (g)(8)(A).

48. Defendants, despite mandatory duties to report and investigate and actual verbal acknowledgement and agreement with Kumari to investigate, engaged in deliberate

indifference to AS, AK, and AKM being endangered, neglected, abused, and not receiving attention their medical and nutritional needs.

49. As a direct and proximate result of these Defendants' misconduct, Plaintiffs have suffered, and will continue to suffer, general and special damages according to proof at trial, including but not limited to, physical and/or mental anxiety and anguish, among other things.

50. Due to the malicious, wanton, callous, reckless, wrongful and despicable nature of the Defendants' misconduct, as herein alleged and described, Plaintiffs are entitled to recover punitive damages against the individual Defendants, and each of them, in accordance with law and subject to proof at trial.

### THIRD CAUSE OF ACTION

### (VIOLATION OF 5th and 14th AMENDMENT – VIOLATION OF PROCEDURAL DUE PROCESS BY A.S., A.K. AND A.K.M. AGAINST ALL DEFENDANTS)

51. Plaintiff re-alleges and incorporates by reference as if fully set forth herein paragraphs 1 through 50 above and fully incorporates paragraph 48 above.

52. Defendants Gomez-Coats, Williams, and Gonzalez are "mandatory reporters" as Sacramento County Social Workers and Sacramento County employees of a child care institution under Penal Code section 11165.7(a) 14 and 15.  As mandatory reporters, these defendants had a duty to report child neglect and abuse of AS, AK, and AKM under Penal Code section 11165.2 and specifically report about neglect and abuse by foster parents under Penal Code section 11165.5.  These reporters are under an obligations to create a report of the neglect or abuse under Penal Code section 11165.9.  Further follow up reports are required under Penal Code section 11166.

53. In addition to mandatory reporter obligations, counties and their employees are under an obligation to investigate complaints against resource families under Welfare and Institutions Code section 16519.5  (g)(8)(A).

54. Defendants, despite mandatory duties to report and investigate and actual verbal acknowledgement and agreement with Kumari to investigate, engaged in deliberate

indifference to AS, AK, and AKM being endangered, neglected, abused, and not receiving attention their medical and nutritional needs.

55. As a direct and proximate result of these Defendants' misconduct, Plaintiffs have suffered, and will continue to suffer, general and special damages according to proof at trial, including but not limited to, physical and/or mental anxiety and anguish, among other things.

56. Due to the malicious, wanton, callous, reckless, wrongful and despicable nature of the Defendants' misconduct, as herein alleged and described, Plaintiffs are entitled to recover punitive damages against the individual Defendants, and each of them, in accordance with law and subject to proof at trial.

## FOURTH CAUSE OF ACTION

### (BREACH OF MANDATORY DUTY UNDER CALIFORNIA GOVERNMENT CODE SECTION 815.6 ASSERTED BY PLAINITFF CHILDREN AGAINST COUNTY OF SACRAMENTO AND DOES 11-25)

57. Plaintiffs re-alleges and incorporates by reference as if fully set forth herein paragraphs 1 through 59 above and specifically fully incorporates paragraph 48 above.

58. Government Code section 815.6 imposes liability against public entities where entity has a mandatory duty imposed by enactment and the Plaintiffs are injured by breach of such or is a substantial factor in Plaintiffs' injury.

59. Defendants Gomez-Coats, Williams, and Gonzalez are "mandatory reporters" as Sacramento County Social Workers and Sacramento County employees of a child care institution under Penal Code section 11165.7(a) 14 and 15.  As mandatory reporters, these defendants had a duty to report child neglect and abuse of AS, AK, and AKM under Penal Code section 11165.2 and specifically report about neglect and abuse by foster parents under Penal Code section 11165.5.  These reporters are under an obligations to create a report of the neglect or abuse under Penal Code section 11165.9.  Further follow up reports are required under Penal Code section 11166.

60. In addition to mandatory reporter obligations, counties and their employees are under an obligation to investigate complaints against resource families under Welfare and Institutions Code section 16519.5  (g)(8)(A).

61. Defendants, despite mandatory duties to report and investigate, and their actual verbal acknowledgement and agreement of Kumari's requests to investigate, engaged in deliberate indifference to AS, AK, and AKM being endangered, neglected, abused, and not receiving attention their medical and nutritional needs.

62. As a direct and proximate result of these Defendants' misconduct, Plaintiffs have suffered, and will continue to suffer, general and special damages according to proof at trial, including but not limited to, physical and/or mental anxiety and anguish, among other things.

63. Due to the malicious, wanton, callous, reckless, wrongful and despicable nature of the Defendants' misconduct, as herein alleged and described, Plaintiffs are entitled to recover punitive damages against the individual Defendants, and each of them, in accordance with law and subject to proof at trial.

64. As for which they must be a recovery of damages in an amount according to proof.


WHEREFORE, PLAINITIFF demands a JURY TRIAL and judgment against DEFENDANTS and each of them as follows:

1. For damages in an amount to be ascertained with interest of that amount at the legal rate from the inception of the damages as ascertained by the court;

2. Attorney's fees;

3. For costs of suit incurred in this action;

4. For compensatory damages, emotional distress damages, and punitive damages according to proof; and

5. Such other and further relief as the court deems fit and proper.

Dated December 10, 2018                    CHOUDHARY LAW OFFICE


                                           s/ Joel Rapaport
                                           Joel Rapaport, Attorney for Plaintiffs

THIRD AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF